IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TANYA L. APONE,

    Plaintiff,

v.                                             CASE NO. 1:08-cv-00219-MP-AK

MICHAEL J. ASTRUE,

    Defendant.

_____/

**O R D E R**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence and the decision of the Commissioner is affirmed.

**A.**     **PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on October 11, 2000, alleging a disability onset date of October 11, 2000. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on March 22, 2004, and entered an unfavorable decision on May 26, 2004. In that decision, the ALJ found that Plaintiff retained the residual functional capacity (RFC) for light work, with the ability to handle objects "occasionally". (R. 21). In finding that Plaintiff was not disabled, the ALJ did not solicit the testimony of a Vocational Expert (VE), but

instead relied on the medical vocational guidelines which direct a finding of "not disabled" for a person of Plaintiff's age, education, and work history who can perform the full range of light work. (R. 23). The Appeals Council denied Plaintiff's request for review.

Plaintiff filed a civil action in this Court, Case No. 1:05-cv-0054-MP-AK. On April 21, 2006, pursuant to the Commissioner's motion, this Court issued an order remanding the case to the ALJ to "solicit the opinion of a qualified vocational expert (VE) as to what impact, if any, Plaintiff's loss of manual dexterity would have on her ability to perform the full range of light work." (R. 600). On June 23, 2007, the Appeals Council remanded the case to the ALJ for further proceedings. (R. 605-06). Remand was necessary because the ALJ had erroneously relied on the medical-vocational guidelines when, due to Plaintiff's limitation on handling, the ALJ should have solicited an opinion from a VE as to the number of jobs Plaintiff could perform in light of her ability to handle objects only occasionally. The Appeals Council further directed that the record be developed as to the severity of Plaintiff's alleged mental impairments (affective disorder and depression). Id.

The ALJ conducted hearings on December 4, 2007, and April 30, 2008, and entered a second unfavorable decision on June 19, 2008. (R. 575-90). The Appeals Council denied Plaintiff's request for review, thus making the second decision of the ALJ the final decision of the Commissioner. This action followed.

**B.    FINDINGS OF THE ALJ**

The ALJ found that Plaintiff has not engaged in substantial gainful activity at any time relevant to the ALJ's decision. (R. 581). The ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar and cervical spine; carpal tunnel syndrome

(status post carpal tunnel release surgeries); degenerative joint disease of knees; migraines; fibromyalgia; obesity (status post gastric bypass surgery in 1995); and affective disorder. (R. 581). The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 581).

The ALJ found that based on the record as a whole Plaintiff has the RFC to perform light work with the ability to handle objects occasionally, limited to simple, routine, repetitive tasks. (R. 582). Plaintiff was born on September 18, 1958, and was 42 years old on the alleged disability onset date, which is defined as a younger individual. (R. 588). She has no past relevant work and therefore no acquired work skills from past relevant work. (R. 588-89). Plaintiff has at least a high school education and is able to communicate in English. (R. 589). Based on the testimony of the VE, considering Plaintiff's age, education, work experience and RFC, the ALJ concluded that there are significant numbers of jobs in the national economy which Plaintiff could perform. Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act at any time through the date of the decision. (R. 589).

## C. ISSUES PRESENTED

Plaintiff argues that (1) the ALJ erred by not asking the VE the specific question required by this Court's remand pertaining to the impact of Plaintiff's loss of manual dexterity, and (2) the ALJ erred by not asking the VE hypothetical questions that included restrictions resulting from Plaintiff's asserted mental health impairments, and improperly disregarded a hypothetical posed by Plaintiff's representative.. (Doc. 14, p. 6-11).

The Government responds that the ALJ complied with the remand instructions when the ALJ solicited VE testimony that showed Plaintiff could still perform work despite the limitation of being able to handle objects only occasionally. (Doc. 18, p. 6-10). The Government also argues that the ALJ properly considered Plaintiff's ability to perform mental demands of work as part of Plaintiff's RFC assessment, and properly found that Plaintiff retained the ability to perform simple, routine, repetitive tasks. (Doc. 18, p. 10-12).

**D. STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230

(11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?
2. Does the individual have any severe impairment?
3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?
4. Does the individual have any impairments which prevent past relevant work?
5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps her from performing her past work. If Plaintiff establishes that her impairment keeps her from her past work, the burden

shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

### E.  RELEVANT MEDICAL HISTORY

The record reflects that in February 2001, Plaintiff submitted to a consultative physical evaluation performed by Lance Chodosh, M.D. (R. 96-105). On examination, Plaintiff was post bilateral carpal tunnel release surgeries, with no current evidence to support a diagnosis of carpal tunnel syndrome. Plaintiff had a quiet, possibly depressed affect. Plaintiff was able to use her hands for short periods of time and had normal dexterity, even though she alleged she could not use her hands in an extended fashion because of pain. Dr. Chodosh concluded she was able to handle objects on "at least an occasional basis".

In February 2001, Plaintiff presented for a consultative psychological evaluation by Linda Abeles, Ph.D. (R. 106-08). Plaintiff seemed somewhat irritable and she reported experiencing neurovegetative disturbances in her sleep. She denied she was experiencing subjective feelings of depression. The doctor concluded that Plaintiff appeared to have passive-aggressive personality disorder traits, which would not prevent her from maintaining or obtaining employment.

Between 2001 and 2002, Plaintiff continued to complain of problems with her wrists and grip. In March 2001, Physician's Assistant (P.A.) Gary Rexroat noted that Plaintiff's grip was decreased bilaterally in both hands with accompanied cervical spine tenderness. (R. 142). In April 2001, Plaintiff was seen by R. Patrick Jacob, M.D., status post a physical assault in February 2001, with continued complaints of bilateral hand numbness resulting from neck pain. (R. 131-34). The diagnosis was cervical myofascial pain with paresthesias in the upper extremities, and Plaintiff was referred to physical therapy. In January 2002, to relieve her recurrent bilateral carpal tunnel symptom, Plaintiff underwent a left median nerve release, partial resection of lumbrical muscles to the middle and ring fingers and application of a short arm volar splint. (R. 462-89).

Between October 2002 and January 2004, Plaintiff was followed by Jesse Lipnick, M.D., and Anuj Sharma, D.O., from Rehabilitation Medicine Associates. (R. 317-72). The doctors noted that Plaintiff was suffering from carpal tunnel syndrome, status post release surgeries, and anxiety due to pain and depression. In December 2002, Plaintiff underwent surgery to remove a cystic mass from her left palm. (R. 436-57). In January and February 2003, Plaintiff was evaluated by P.A. Rexroat in reference to a soft tissue injury to her right hand. (R. 498-501). She had good pulse and grip. (R. 501). In April 2003, Plaintiff underwent right median nerve release at the carpal tunnel, tenosynovectomy of the flexor tendons and application of a short arm volar splint. (R. 380-405). In April 2005, P.A. Rexroat noted that Plaintiff had some decreased grip and numbness in her hands, which was accompanied by neck pain and pain radiating into her shoulders. (R. 685).

From 2004 to 2007, various doctors noted during multiple visits that Plaintiff was

suffering from depression, bipolar disorder, and anxiety. (R. 673-710, 748-77, 784-831). Plaintiff was treated at Meridian Behavioral Healthcare from May 2005 through December 2006, when she was discharged because her Medicaid was dropped. (R. 716-47). Discharge notes reveal she attended 15 therapy appointments and saw a psychiatrist on 10 occasions. Progress notes indicate that she had a lot of family problems involving her sons's health and a custody battle involving her grandchildren. Her Global Assessment of Functioning (GAF)[1] score at discharge was 54, up from 51 at admission. Plaintiff returned to Meridian in July 2007 with complaints of depression. She was supposed to return in September 2007, but failed to show up. (R. 716).

F.  **SUMMARY OF THE ADMINISTRATIVE HEARING**

A hearing was held on Plaintiff's application on April 30, 2008. Plaintiff appeared with her representative. (R. 864). Plaintiff testified that she was 49 years old. (R. 867). She is divorced; she has not pursued any vocational training since she obtained her associate's degree in graphic design. (R. 867). She previously worked as a cook and as a cashier in 1994. (R. 868). In 1995, she had a six-week internship as an image photographer adjustor, during which she took photographs, scanned them into a computer and adjusted the quality of the image. (R.

---

[1] "The GAF scale reports a 'clinician's assessment of the individual's overall level of functioning.' American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed.1994)." Sims v. Barnhart, 309 F.3d 424, 427 n. 5 (7th Cir.2002). A GAF score of 41-50 indicates: "Severe symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." A GAF score of 51-60 indicates: "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). See http:// psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp

867). She has not worked since then. (R. 868). Plaintiff has not undertaken any long-term projects since November of 2000, because she is not able to perform physically and emotionally. (R. 872). She currently has no income. (R. 874). Until six months prior to the hearing, child support arrears for her son were her only source of income, but that income has ended. (R. 874). Her son was born with disabilities and he is receiving Medicaid. (R. 873).

Plaintiff testified that she was treated by Meridian Behavioral from 2005 to 2007. (R. 868) because of her depression and anxiety caused by problems with her grandchildren, her son's disabilities and her own abilities to cope. (R. 869). She stopped treatment after she lost Medicaid and, without medical insurance, she could not afford it, even though an evaluation cost only $8.00, an appointment $3.00, and medications $3.00. (R. 872-73). She has not tried to obtain any mental health treatment, including free treatment, since she stopped going to Meridian. (R. 873-74).

Plaintiff testified that she continues to suffer from anxiety and depression. (R. 869). She often cries and everything seems "impossible." (R. 869). She is able to cope with one thing at a time, and she has one or two days per week when she does not get out of bed. (R. 869, 870). She gets anxious four to five days a week, and then she has problems with "being just upset, hysterical, trying to calm down and get a grip." (R. 869). Such episodes are sparked by her own disabilities, her inability to do things that she used to be able to do, and her son's imminent death. (R. 870). Her depression and anxiety affect her ability to concentrate and she often forgets things. (R. 870). To ease her memory problems, she creates schedules and writes notes to herself. (R. 870). Sometimes she does not even remember what day it is and has to verify that using her phone. (R. 870).

Plaintiff testified that she does not socialize because it is too much effort for her due to her anxiety and depression. (R. 870-71). She has one friend but they see each other just "once in a while." (R. 870-71). She has had chronic insomnia since she was a teenager, which makes it difficult to function during the day. (R. 871). Her energy levels have been low for a long time. (R. 871).

The ALJ elicited testimony from a VE. The VE confirmed that plaintiff never worked at a substantial gainful activity level. (R. 875). The ALJ posed two hypothetical questions to the VE. The fist hypothetical assumed an individual between the ages of 42 and 49 who has education and no past relevant work. The individual can lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently, and has the ability to sit, stand, and walk for six hours in an eight-hour day. The individual can use the upper extremities on a repetitive basis, with no environmental limitations, and could perform simple, routine, repetitive tasks. (R. 876). The VE responded that such an individual could be a cashier (DOT No. 211.462-014, light physical demand category, Specific Vocational Preparation (SVP) of two, unskilled). The VE testified that there are 300,000 such jobs in the national economy, with 85,000 in Florida. The individual could also be a fast food worker (DOT No. 311.472-010, light physical demand category, SVP of two, unskilled). There are 71,000 such jobs in the national economy, with 4,500 in Florida. (R. 876).

The ALJ's second hypothetical question assumed an individual with the same limitations as above and the ability to only occasionally handle items. (R. 876). The VE responded that such an individual could not perform the two jobs mentioned earlier, but could work as a surveillance system monitor (DOT No. 379.376-010, technical services category in the sedentary

category, SVP of two, unskilled). There are 23,500 such jobs in the national economy, with 550 in Florida. The individual could also be a charge account clerk (DOT No. 205.367-014, sedentary category, SVP of two, unskilled). There are 35,000 such jobs in the national economy, with 450 in Florida. (R. 876-77).

Plaintiff's representative then posed a third hypothetical to the VE. The hypothetical assumed an individual with limitations as set out by the ALJ but with a marked (four to five days per week) inability to complete a normal work day and work week without an unreasonable number of lengths of rest period because of psychological symptoms. (R. 877-78). The VE responded that such an individual could not do any of the jobs mentioned earlier. (R. 878).

## G. DISCUSSION

Plaintiff asserts that the ALJ did not comply with this Court's directions on remand to solicit the opinion of a VE regarding the impact of Plaintiff's loss of manual dexterity. A review of the record reflects otherwise. As noted above, a remand was necessary because, following the initial hearing, the ALJ improperly relied on the medical-vocational guidelines at step five of the analysis to find that Plaintiff was not disabled, rather than eliciting testimony from a VE who could take into account Plaintiff's impairment that limits her to only occasionally handling objects. See Francis v. Heckler, 749 F.2d 1562, 1566-67 (11th Cir. 1985) (use of guidelines not permitted where claimant was unable to perform full range of work at a given residual functional level or when claimant has a non-exertional impairment that limits basic work skills); 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(e) (guidelines not fully applicable where nature of impairment is non-exertional, citing "manipulative limitations" as an example). The ALJ's second hypothetical to the VE included the limitation that Plaintiff can only "occasionally" handle

objects. Plaintiff points to no medical evidence that suggests the ALJ's determination on this point is incorrect. The ALJ's determination is supported by substantial evidence in the form of the opinion of Dr. Chodosh, following his examination in 2001, that Plaintiff could "at least occasionally" handle objects, and by the reports of state agency physicians who reviewed Plaintiff's medical records and determined that the records did not support a conclusion that Plaintiff had any manipulative limitations. (R. 96-105, 109-16). Further, the record does not reflect that Plaintiff has specifically sought treatment for difficulty handling objects since her final carpal tunnel release surgeries.

Plaintiff contends that the ALJ failed to pose a hypothetical to the VE that included appropriate restrictions arising from Plaintiff's mental health impairments, after finding that Plaintiff has the severe impairment of affective disorder. The hypothetical posed by the ALJ included the assumption that Plaintiff should be limited to "simple, routine, repetitive tasks." Plaintiff formulated a hypothetical for the VE that included "a marked [in]ability to complete a normal work day and work week without any interruptions from psychologically based symptoms," based on Plaintiff's initial GAF of 45-50 when she began treatment with Meridian in May 2005. (R. 747). However, Plaintiff's Meridian discharge notes from December 2006 reflect that her GAF of 51-54 placed her in only the "moderate" impairment range. (R. 719). The ALJ reviewed Plaintiff's records of her mental health treatment from Meridian, as well as Plaintiff's testimony regarding her daily activities. The ALJ noted that Plaintiff was able to care for herself, her disabled son, and two grandchildren, and did not seek any mental health services from any state or county agencies after her insurance expired. There is thus substantial evidence for a finding that the ALJ's hypothetical appropriately accounted for the full extent of Plaintiff's

mental health impairments.

Accordingly, it is

**ORDERED AND ADJUDGED:**

That the decision of the Commissioner denying benefits is **AFFIRMED**.

**DONE AND ORDERED** this  *31st*   day of March, 2010


*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge